## Bensalem Township School District v. Terry

766

*Barrett & Monroe* and *Eastburn, Begley & Fullam,* for plaintiff.

*Neal & Patten,* for defendant.

SATTERTHWAITE, J., November 4, 1955.—By complaint in assumpsit filed November 13, 1953, plaintiff school district commenced this action to recover from defendant Terry, as manager or proprietor, and defendants Becker and wife, as land owners, certain delinquent taxes and penalties assessed by the school district by reason of house trailers located and occupied by various other persons within defendants' trailer parks. Part of said claim related to taxes arising from trailers located on defendants' premises known as the Hi-Way Trailer Court during the period from November 16, 1951, until August 8, 1953; the balance related to taxes attributable to trailers in defendants' other establishment known as Terry's Trailer Camp from August 8, 1953 to September 30, 1953. The theory of

the cause of action is that three certain taxing resolutions of the school district, effective for the several respective portions of the periods in question (copies of each being attached), not only levied the taxes upon the occupants of such trailers, but also made the owner or proprietor of the land so occupied responsible for the collection thereof and personally liable thereafter if not otherwise paid over to the school district. The complaint further alleges the failure of defendants to file reports required by the resolutions or to collect and pay over the taxes accruing from such occupancy of their trailer parks by "great numbers of persons", with the exception of one payment of $295 made on October 12, 1953. The complaint concludes with an averment of the results of an audit of defendants' business records, with defendants' consent, whereby it was alleged that the aggregate sum of $6,777.46 was established as due and payable for the periods indicated. After preliminary objections had questioned, inter alia, the indefinite form of the generalities so pleaded, a stipulation was filed on April 2, 1954, incorporating written statements of the audit mentioned, and setting forth, in part, a "break-down" of the various elements entering into the total tax and penalty computations.

Subsequent to certain interim proceedings relating to the sufficiency of the pleadings, defendants have ultimately filed an amended answer admitting or failing sufficiently to deny the factual averments of the complaint so that, except for details of the computations of the respective tax items, there is presently no disputed question of fact involved. By way of new matter therein, however, defendants have attacked the legality of the several tax resolutions on various constitutional and statutory grounds and hence deny liability. The matter is presently before the court on plaintiff's preliminary objections to such new matter,

consisting both of a demurrer thereto as well as a motion for a more specific statement thereof.

The first taxing resolution so questioned, covering that part of the period in dispute down to July 7, 1952, was adopted by the board of school directors on May 10, 1950. After a preamble reciting the occasion therefor and a formal enacting clause, it provided, in part, as follows:

"1. Tax Levied: That a monthly tax of two dollars ($2.00) per trailer, shall be paid into the general funds of the School District, and is hereby levied and imposed upon all house trailers which are situate or located within the boundaries of Bensalem Township School District and are regularly occupied and used for dwelling or business purposes for a consecutive period of fifteen (15) days or more. The tax hereby levied shall be payable in monthly installments of two dollars ($2.00) each, and shall be paid in advance to the owner or proprietor of the land or trailer camp upon which the house trailer is located."

Further provisions purportedly made the owner of the land or proprietor of the trailer camp personally liable for the tax so imposed if not collected and paid over by him to the tax collector.

Defendants' first contention in the new matter is that this resolution, in terms imposing a tax upon the trailers themselves, is a property tax and, since measured by a flat impost rather than on an ad valorem basis, violates the requirements of article IX, section 1 of the Pennsylvania Constitution that all taxes be uniform upon the same class of subjects and hence is void: Commonwealth ex rel. v. A. Overholt & Co., Inc., 331 Pa. 182; Folcroft Borough v. General Outdoor Advertising Company, Inc., 72 D. & C. 539.

Plaintiff's first preliminary objection is a demurrer to this position. At the argument, it appeared that counsel for plaintiff did not quarrel with the legal

proposition urged, but disclaimed its applicability, contending that the resolution does not impose a property tax but is rather an excise on the use or occupation of house trailers within the township for the required period. The difficulty with this argument, however, is that the resolution simply does not express such intention. Section 1 thereof, above quoted, levies a tax "upon all house trailers", later qualifying and further particularizing the subject of the tax by requiring that the trailers be geographically situate within the taxing jurisdiction (a fundamental limitation; see Girard Trust Company, v. Union Township School District, 74 D. & C. 342) and that they be occupied for a period of 15 days or more, thus excluding those possibly of the transient category or merely held for storage or sale. Moreover, any possible doubt about the legislative intent of the school directors is definitely removed by the language used in the title of the resolution:

"A Resolution . . . imposing a tax, to provide revenue for general school purposes, *upon house trailers* situate within the said township, providing for the method of collection of the same. . . ." (Italics supplied.)

Under this phraseology, we must reject plaintiff's contention that the qualifying phrase "regularly occupied and used" actually expresses a purpose to impose the tax levy on occupation and use and is not merely a descriptive term further identifying the property subject to the tax. Neither the resolution itself nor its title manifest any such legislative intent. Compare Peoples Natural Gas Company v. Pittsburgh, 317 Pa. 1; Lawrence Township School District Tax Case, 362 Pa. 377; Jamison Coal & Coke Company v. Unity Township School District, 362 Pa. 389; Panther Valley Television Company v. Summit Hill Borough, 376 Pa. 375; Girard Trust Company v. Union Township School

District, 74 D. & C. 342. To the extent that the first two paragraphs of the opinion in Appeal from Tax on Trailers, 37 Del. Co. 284, 42 Mun. L. R. 12, may actually be inconsistent herewith, we must respectfully disagree and decline to follow the same. We may further point out that it is not clear that the observation there made related to questions actually raised and argued; in any event, only an abbreviated part of the language of the resolution in question was quoted.

Accordingly, we hold that the resolution of May 10, 1950, is unconstitutional and void; that the first paragraph of defendants' new matter does state a valid defense, and that therefore plaintiff's first preliminary objection, being a demurrer thereto, must be dismissed and overruled.

According to the complaint, the balance of the taxes for which this suit was brought, i.e., those for the period subsequent to July 7, 1952, arose under other annual taxing resolutions adopted on May 14, 1952, and May 27, 1953, respectively. Except for repealer and effective date clauses, both resolutions were substantially identical and both expressly imposed the tax, payable by the trailer occupant, upon the *use* of house trailers for a consecutive period of 15 days or more, thus avoiding the constitutional objection hereinabove discussed with respect to the 1950 resolution. Both levied a tax at the increased rate of $5 per month, required the owner or proprietor of the trailer camp to collect the same monthly in advance and to make reports and remittances to the tax collector at the end of each month, and imposed personal liability upon the owner of the land or trailer camp as well as the occupants of the trailers for the amount thereof upon failure to pay the same over to the tax collector.

The second paragraph of defendants' new matter further attacked both these resolutions (as well as

the resolution of May 10, 1950) on broad and indefinitely phrased constitutional grounds. Defendants apparently intend to argue that the taxing resolutions as applied to them were violative of the equal protection and due process clauses of the United States and Pennsylvania Constitutions. They also made certain averments relating to condemnation proceedings by the Pennsylvania Turnpike Commission which required the removal of one of the trailer parks (the relevancy of which does not appear), and further charged that they "were denied the availability of enforcement powers by the taxing authority of the township of Bensalem". Plaintiff has both demurred to and attacked the form of these allegations.

We are totally unable, on the present record, to pass upon the questions so attempted to be raised. If defendants are contending that the imposition of tax collecting duties and a quasi-surety liability upon the trailer park proprietors necessarily invalidates the resolutions, the case is controlled by our decision in Bensalem Township Trailer Tax Ordinance Case, 84 D. & C. 502. On the other hand, if, as apparently is the fact, defendants are depending upon peculiar and unusual individual situations and circumstances relative to particular trailer occupants and particular times or places, so as to come within the possible due process question expressly reserved in the Bensalem Township case, supra, then they have utterly failed to state any factual basis therefor. Accordingly, we sustain plaintiff's preliminary objections numbered 8, 9, 10, 11 and 12 requesting a more specific pleading in this respect.

The third paragraph of defendants' new matter challenges the resolution of May 27, 1953, on the further ground that the rate of $5 per month imposed thereby was excessive under the Act of May 27, 1953, P. L. 234, amending, inter alia, subsection E of section

1 of the Act of June 25, 1947, P. L. 1143, as previously amended, 53 PS §2015.1 E, so as to limit taxes on the use and occupancy of house trailers to $2.00 per month. Plaintiff's seventh preliminary objection is a demurrer to this allegation.

We thought that the question so raised had been finally disposed of by this court in Poling v. Bensalem Township School District, 4 Bucks 53, an action in equity to preclude enforcement of this very resolution insofar as it imposed an excessive rate of tax. We there held that the school district was limited by the Act of 1953 to a tax of $2 per month. Present counsel for the school district, however, contends that that decision is not binding because the attorney then representing it had conceded that the Act of 1953 was effective on July 6, 1953 (which also was the effective date of the tax resolution), a concession which it is now contended was improper. We believe there is no merit in this position.

The amending Act of May 27, 1953, P. L. 234, so limiting the rate of tax contained no expressly stated effective date. It would, therefore, be governed by section 4, third paragraph, of the Statutory Construction Act of May 28, 1937, P. L. 1019, as added by the Act of June 3, 1941, P. L. 82, 46 PS §504:

"Laws affecting the budget of any political subdivision, enacted finally at a regular session of the Legislature, shall be in full force and effect at the beginning of the fiscal year of the political subdivisions affected following the date of the final enactment of such law unless a different date is specified in the law itself."

There can be no doubt but that the Act of 1953 would affect the budget of plaintiff school district. Compare Sharpsburg Borough Annexation Case, 163 Pa. Superior Ct. 84, 90. The only question, therefore, would seem to be the determination of the "beginning of the fiscal year". This is unequivocally answered

by section 671 of the Public School Code of March 10, 1949, P. L. 30, as amended, 24 PS §6-671, which provides, as to school districts of the third and fourth class, that "the fiscal year *shall* begin on the first Monday of July in each year". See also section 101 (43) of the Statutory Construction Act, supra, 46 PS §601(43) defining "Fiscal year" as "the year by or for which accounts are reckoned".

We cannot fly in the face of these unambiguous statutory provisions and hold, as plaintiff would have us do, that the fiscal year began with the adoption of the budget and the annual tax levy by the Board in April or May, 1953. It may be that the result of this decision would be to throw the budget out of balance for the fiscal year in question by reducing the amount of contemplated tax revenue; if so, however, that is a matter for the Legislature, not the courts.

Our conclusions in this respect are fortified by the history of the third paragraph of section 4 of the Statutory Construction Act quoted above. As indicated, it was originally added to that section in 1941. By the Act of August 24, 1951, P. L. 1427, additional language was appended at the conclusion thereof as follows:

"or if enacted finally after the beginning of such fiscal year, or after the date specified in the law, the same shall become effective immediately upon final enactment".

However, by the Act of May 27, 1953, P. L. 240 (effective upon enactment), the last quoted clause was deleted in its entirety, thus restoring the original language of the 1941 Act.

Thus, the 1951 legislature expressed a policy that laws affecting the budget of a political subdivision be effective immediately notwithstanding that the fiscal year itself had already begun. The 1953 legislature repudiated this policy insofar as statutory enactments

after the beginning of the fiscal year were concerned, but failed, notwithstanding that it had the broad general question before it, to modify the former policy that legislative changes affecting such budgets be effective at the beginning of the next following fiscal year, without regard to the time of actual adoption of the budget for such fiscal year.

For the reasons stated in the Poling case, as supplemented herein, we reiterate that the 1953 legislation limiting the rate of tax on the use and occupancy of house trailers became effective, as to plaintiff school district, on July 6, 1953, and hence superseded the rate specified in the tax resolution which also became effective on that date. It reduced the rate of tax to $2 per month for the ensuing fiscal year. Accordingly, plaintiff's demurrer to the third paragraph of the new matter should be overruled insofar as it relates to the defense of excessive rate of tax set up in the new matter of the answer.

## Order

And now, November 4, A. D. 1955, for the reasons stated in the foregoing opinion, plaintiff's preliminary objections to defendants' new matter numbered 1 and 7 are hereby overruled and dismissed; those numbered 8, 9, 10, 11, 12 are hereby sustained, with leave to defendants to file an amended answer and new matter within 20 days from this date; those numbered 2, 3, 4, 5 and 6 are reserved if defendants file such amended pleading, but will be sustained upon defendants' failure to amend.

## Opinion and Order Sur Plaintiff's Preliminary Objections to Defendants' Second Amended Answer

Three successive taxing resolutions of plaintiff school district assessed monthly taxes upon occupants of house trailers within the district and imposed liability upon the owner or proprietor of the trailer camp to collect and transmit the same to the tax collector.

By this action of assumpsit, plaintiff seeks to recover certain unpaid and delinquent taxes and penalties alleged to be due under each of these resolutions from defendant Terry, as manager, and defendants Becker and wife, as owners of two affected trailer parks. The substantive nature and basis for the claims and the general background thereof are set forth in an earlier opinion of this court sur preliminary objections to defendants' amended answer, filed November 4, 1955. Although the case has now been pending for more than two and one-half years, it is not yet at issue on the merits. For the third time, questions of the sufficiency of the pleadings are before the court.

A brief review of the chronology of the many pleadings is necessary in order to understand the present question. The complaint was filed November 13, 1953, and served a few days later. Defendants filed preliminary objections thereto on December 8, 1953. These, however, were apparently abandoned by reason of a stipulation relative to certain accounting matters entered into on March 31, 1954. On April 20, 1954, defendants filed their original answer which contained three paragraphs of new matter averring certain legal propositions by way of affirmative defense to plaintiff's claim. The first attacked the taxing resolution of May 10, 1950, on the ground that it lacked constitutional uniformity. The second challenged all three taxing resolutions under the broad and general language of the due process and equal protection clauses of the United States and Pennsylvania Constitutions without pleading any facts in support thereof. The third argued that the resolution of May 27, 1953, was invalid because the tax was imposed at a rate in excess of that authorized by the enabling statute.

After a delay of several months, the occasion for which does not appear of record, plaintiff filed a motion on December 8, 1954, for judgment on the pleadings.

After argument, this motion was refused by order of the court without opinion on February 28, 1955. Such order, however, also granted defendants' request for leave to file an amended answer containing new matter, and the undersigned, rather than preparing and filing a formal opinion, by informal letter advised respective counsel of his views on the questions raised by the new matter in the original answer and specifically pointed out the necessity for pleading a factual basis for the due process question.

On March 21, 1955, defendants filed their amended answer and new matter. The first and third paragraphs thereof were identical to those in the original answer and, notwithstanding the prior informal suggestions of the undersigned, the factual statements in support of the second paragraph, again raising the due process question, were wholly inadequate. Plaintiff's preliminary objections thereto, filed on April 6, 1955, were in part sustained, after argument, by the aforementioned opinion and order of this court on November 4, 1955, wherein leave was again given defendants to amend paragraph 2.

The second amended answer was filed November 25, 1955, the first and third paragraphs thereof still being identical to those in the original answer. The second paragraph, after repeating the averments of general unconstitutionality of the three taxing resolutions on broad due process and equal protection grounds, apparently sought to specify several unusual circumstances in support thereof: The refusal to provide defendants with legal process to enforce their duty to collect the tax under the resolutions; the refusal of plaintiff's tax collector himself to institute action against an individual trailer occupant; the refusal of plaintiff to clarify the applicability of the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, 54 Stat. at L. 1178; the denial of relief from confusion,

uncertainty and burden engendered by the removal of certain trailers from one of defendants' two sites to the other as a consequence of the condemnation of the former by the Pennsylvania Turnpike Commission; the refusal of plaintiff's representatives to have conferences with defendants, and the vagueness in general of the resolutions insofar as they related to defendants' rights and duties of collection. The sufficiency and propriety of the averments of such second paragraph are presently before the court after argument on plaintiff's preliminary objections thereto.

Defendants clearly have not yet complied with the above-mentioned prior order and accompanying opinion entered on November 4, 1955. They totally fail to specify with any degree of certainty the factual basis for the broad constitutional questions which they are attempting to raise. The observations made in the former opinion, filed November 4, 1955, are still equally applicable. The amended language is prolix in form and indefinite in content so that plaintiff's preliminary objections numbered 5, 6 and 7, being motions for a more specific pleading as to the various parts of paragraph 2 of the new matter, must all be sustained.

Plaintiff also contends that, in view of the history and background of the extended pleadings already filed in this case, its demurrer to the second paragraph of the second amended answer should now be sustained without further leave to defendants to amend. This position carries great weight; there should be some end to the pleading stage of this case so that it may be disposed of on its merits.

Even if the informality or lack of particularity of defendants' latest pleading be disregarded, we cannot agree that any of the factual matters therein alleged conceivably justify the legal position taken. Under section 1 of the 1952 and 1953 taxing resolutions,

the duty to collect the tax in the first instance is clearly imposed upon the owner or proprietor of the land or trailer camp upon which the house trailer be located. (The 1950 resolution may here be ignored since we have earlier in this action ruled it to be unconstitutional.) As an incident of the usual course of his business, the trailer camp proprietor is not unreasonably required to be the party actually delegated to enforce the tax. Such requirement may constitutionally be imposed upon him and, if he does not stubbornly refuse to perform this function as defendants apparently have in this case, he may collect the tax with no more difficulty than he ordinarily would have in collecting rent or other amounts due him from his tenants, such as service charges for utilities: Bensalem Township Trailer Tax Ordinance Case, 84 D. & C. 502, 515-16.

Absent the most unusual circumstances, none of which are even hinted in this case, it is only through his own dereliction that the proprietor will have any occasion to resort to legal action. Furthermore, even if there be any justifiable, although presently undisclosed, necessity for defendants to require process of law to carry out their duties, the undisputed provisions of sections 1, 5 and 6 of both the 1952 and 1953 resolutions afford ample authority therefor. No participation by either the school board or the tax collector is necessary thereunder. It follows, accordingly, that all of defendants' vague and indefinite assertions of lack of coöperation on plaintiff's part, even if legally chargeable to it, which itself is doubtful, are totally immaterial and irrelevant in the within proceeding and should be disregarded. Similarly, the relocation of some of the trailers in question from defendants' "Hi-Way Trailer Court" to their "Terry's Trailer Camp" because of the activities of the Pennsylvania Turnpike Commission is a matter totally foreign to

the scope of the inquiry in the present case and constitutes no defense whatsoever to the liability for tax under the resolutions in question.

In short, notwithstanding that this is their third opportunity to do so, defendants have still totally failed to set forth any basis for their contentions of over-all unconstitutionality. Despite the fact that they rely upon the possible door left open by the opinion of this court in Bensalem Township Trailer Tax Ordinance Case, supra, 84 D. & C. at pages 516-17, they persist in their refusal to aver any unusual and extraordinary instances where the particular circumstances of specified trailer occupants might render it unjust and inequitable to hold them responsbile for noncollection of the taxes due by reason thereof. Paragraph 2 of the new matter of their second amended answer accordingly is not only inadequate and improper in form but also totally lacking in legal substance. Plaintiff's preliminary objections numbered 1 and 2, being demurrers thereto, should therefore be sustained.

Under the circumstances disclosed in this record, it is apparent that there is no necessity for affording defendants a still further opportunity again to amend their new matter. Their dilatory tactics and steadfast refusal to plead definite facts in support of their broad conclusions of law are totally without merit. Their rights have already been more than adequately recognized. The following observation from the opinion of the Superior Court in Philadelphia to use v. Pachelli, 168 Pa. Superior Ct. 54, 60-1, is equally appropriate here:

"Where a defect in a pleading may be cured by amendment, a final judgment should not be entered without affording an opportunity to amend. *Holladay v. Fidler*, 158 Pa. Superior Ct. 100, 43 A. 2d 919. In this case, not only was the defendant given an opportunity to amend but the learned court below, in its

opinion sustaining the use—plaintiff's objections to the original affidavit of defense and allowing the defendant an opportunity to amend, pointed in what particulars the original affidavit was defective. . . . Since it may be assumed, as a general proposition, that a defendant will state his case as strongly in an affidavit of defense as the facts will warrant (*Philadelphia v. Baker*, 140 Pa. 11, 21 A. 238), it must be concluded that the defendant was unable to draft his amended affidavit in more specific language and, as a result, it is not sufficient to entitle him to a trial by jury."

Plaintiff's preliminary objections numbered 3 and 4, attacking the substance and the form of paragraph 3 of the new matter of the second amended answer, present exactly the same questions which were ruled adversely to plaintiff in the earlier opinion in this case. For the reasons therein stated, preliminary objections numbered 3 and 4 should be overruled.

### Order

And now, June 29, A. D. 1956, for the reasons stated in the foregoing opinion, plaintiff's preliminary objections to defendants' second amended answer numbered 1, 2, 5, 6 and 7 are sustained without further leave to defendants to amend. Plaintiff's preliminary objections numbered 3 and 4 are overruled and dismissed.